**ORIGINAL**

**FILED**
**JUN - 5 2015**
**U.S. COURT OF FEDERAL CLAIMS**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| James Doyle, an individual, d/b/a Rocky Mountain Ventures, and Environmental Land Technologies, Ltd., a Utah limited partnership, | |
| Plaintiffs, | Case No. 15 - 572 L |
| v. | Hon. _____ |
| United States, | |
| Defendant. | |

## COMPLAINT FOR TAKING AND BREACH-OF-CONTRACT

This is a suit for the taking of 2,440 acres of Plaintiffs' highly valuable development land in rapidly growing St. Georges, Utah, taken to protect and provide habitat for the Utah desert tortoise, a species listed under the Endangered Species Act, 16 U.S.C. § 1531–1599. Although the United States has consistently promised to either purchase Doyle's land or to provide federally owned land of equal value in exchange for Doyle's land, the United States has failed to fulfill this promise—forcing Doyle into bankruptcy where he lost some of his land to creditors while his remaining land now lacks all beneficial and productive use.

**Parties**

1. Plaintiff James Doyle is a real estate developer who, through his wholly owned limited partnership, Plaintiffs Environmental Land Technologies, Ltd. and doing business as Rocky Mountain Ventures, originally owned 2,440 acres

and held preferential rights to an additional 11,000 acres of highly valuable development land in the rapidly growing St. Georges, Utah area.

    2.    Plaintiff Environmental Land Technologies, Ltd., a Utah limited partnership, and Rocky Mountain Ventures are entities wholly owned by Plaintiff, James Doyle, and were the owners of record of the Doyle lands. Environmental Land Technologies is the successor-in-interest to Rocky Mountain Ventures. Plaintiff, Doyle, often acted through one of these wholly owned entities, and their actions were the actions of Doyle.

    3.    Defendant, the United States of America, is a republic formed under the Constitution of the United States, acting through the Department of the Interior, including the Bureau of Land Management, the Fish & Wildlife Service, and other federal agencies, departments, bureaus, and offices, and is subject to the constraints of the Constitution, including the Fifth Amendment, which provides that private property shall not be taken for public use, without just compensation.

**Jurisdiction**

    4.    This Court has jurisdiction over these claims under 28 U.S.C. § 1491 (the Tucker Act) as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of any executive department or upon any express or implied contract with the United States."

**Statement of Facts**

**Doyle purchases Land for his St. Georges development**

    5.    In the early 1980s Plaintiff, Doyle, began assembling land for a

massive real estate development in the rapidly growing St. Georges area of Utah. The centerpieces of this development were nine golf courses surrounded by luxury homes. In all, Doyle acquired 2,440 acres and held preferential rights to an additional 11,000 acres for this development.

6. Throughout the 1980s and into the 1990s, Doyle invested large amounts to acquire and develop his land. Doyle (i) procured water rights and engineering studies, (ii) developed proposals and designs for transportation corridors, (iii) constructed one golf course and designed nine more, (iv) developed utility lay-outs and placements, (v) installed necessary sewer, water, and power for the various properties, and (vi) secured all necessary zoning adjustments and development permissions. With planning and preparation essentially complete by 1989, Doyle was prepared to break ground for the initial phase of his project.

**The listing of the desert tortoise under the Endangered Species Act destroys all economic or productive use of Doyle's land**

7. On April 2, 1990, the United States Fish & Wildlife Service published a final rule listing the Mojave population of the desert tortoise as "threatened" under the Endangered Species Act. And on February 8, 1994, the Fish & Wildlife Service published a final rule designating all of Doyle's land as critical habitat for the Mojave population of the desert tortoise.

8. The Fish & Wildlife Service's listing of the desert tortoise and designation of Doyle's land as critical habitat for the tortoise made Doyle's land development (as well as that of other nearby lands) unlawful.

9. Doyle collaborated with other landowners as well as federal, state, and county officials to create a habitat conservation plan for Washington County that would have allowed Doyle to develop a portion of his land. But Fish & Wildlife Service rejected the County's proposed habitat conservation plan; stating that the plan set aside insufficient land to protect the tortoise.

10. On February 23, 1996, the Fish & Wildlife Service issued an incidental take permit that incorporated and approved a revised habitat conservation plan prepared by the County, Doyle, and other affected landowners. The Fish & Wildlife Service, by approving the revised plan, allowed the development of 350,000 acres of tortoise habitat and placed Doyle's property within a 61,022-acre tortoise habitat reserve (the Red Cliffs Reserve) where no development was allowed. Instead, the plan promised that private landowners within the Reserve, including Doyle, would either receive an exchange of federally owned land of equal value to his or else they would receive payment from the Land and Water Conservation Fund, "a dedicated Federal trust fund whose monies can be used for acquisition of private and municipal lands for outdoor recreation, wildlife habitat, and threatened and endangered species preservation" in exchange for their land.

11. In addition, the Fish & Wildlife Service and the Bureau of Land Management entered into an agreement on February 23, 1996 with the State of Utah, Washington County, and the City of Ivins to implement the Habitat Conservation Plan. This Implementation Agreement also requires the Bureau of Land Management to exchange or otherwise acquire private lands within the

reserve, including Doyle's lands. Doyle is an intended third party beneficiary to the Habitat Conservation Plan and the Implementation Agreement. The Implementation Agreement states:

> Both BLM and USFWS will, to the maximum extent practicable, allocate sufficient staff and financial resources as may be necessary to accomplish these goals as required herein. USFWS shall include in annual budget requests sufficient funds to fulfill its obligations under this Agreement and the HCP. BLM shall likewise include in annual budget requests sufficient funds to fulfill its obligations under this Agreement and the HCP.[1]

A copy of this agreement is attached as Exhibit 1.

12. Doyle actively worked with and assisted the U.S. Bureau of Land Management and the Fish & Wildlife Service to identify federal land of equal value, to appraise the properties, and to structure several possible land exchanges for his property. Between 1996 and 1999, the Bureau exchanged or purchased approximately 383 acres of Doyle's property. In 2006, the Bureau purchased or exchanged approximately 24 acres of Doyle's property. In 2010 and 2011 Doyle and the Bureau engaged in extended negotiations, involving several appraisals of Doyle's property. But the Bureau obtained an additional appraisal without Doyle's knowledge that significantly lowered the estimate of his property, compared to earlier appraisals. Doyle rejected that appraisal and the purchase or exchange was never finalized.

13. In addition, Doyle has worked with the Habitat Conservation Advisory Committee—the entity approved by Defendant to facilitate these land

---

[1] HCP Implementation Agreement at 12, § V(L).

exchanges or purchases—and the Committee has discussed the possibility of a land exchange or purchase of Doyle's properties as well as the other creditors' parcels during monthly meetings in 2008, 2009, 2010, 2011, and 2012 with no resolution. In sum, the Bureau has never made a funded offer to Doyle for his entire acreage, and Defendant has not completed the purchase or exchange of a majority of Doyle's land.

14.     On January 24, 2012, Doyle asked the Habitat Conservation Advisory Committee to purchase a portion of Doyle's land within the Reserve for $2.5 million. On May 3, 2012, the Habitat Conservation Advisory Committee summarily rejected Doyle's proposal. Committee meeting minutes of the discussion of Doyle's proposed sale reveal that the problem is lack of federal funding and willingness for either a land exchange or purchase.

15.     On March 30, 2009, President Obama signed a bill designating the Red Cliffs Desert Reserve as the Red Cliffs National Conservation Area, making the Reserve a wilderness area under the Wilderness Act. The Wilderness Act requires the acquisition of private land when, as in Doyle's case, the private land is surrounded by wilderness areas such as the Red Cliffs National Conservation Area and the private landowner cannot adequately access his land.[2]

**Doyle declares bankruptcy**

16.     Unable to develop, exchange or sell his land, in which Doyle had invested millions of dollars, On March 30, 2004, Doyle was forced to seek

---

[2] Pub. L. No. 88-577, 78 Stat. 896

bankruptcy protection. In 2010 Doyle completed and the bankruptcy court approved a plan under which Doyle was required to transfer to his creditors all but 274 acres of his land, which he still owns.

## FIRST CAUSE OF ACTION
### (Just compensation for property rights in land taken)

17. Doyle realleges and incorporates by this reference all of the proceeding allegations of this complaint, and further alleges as follows:

18. The Fifth Amendment to the Constitution prohibits the United States from taking private property for public use without payment of just compensation: "nor shall private property be taken for public use, without just compensation."

19. The direct, natural, and foreseeable result of the Government's actions has been to deprive Doyle's land of all economic and productive use for the public purpose of species protection, constituting a taking for which Doyle is entitled to just compensation.

20. To date Defendant, the United States, has not provided Doyle just compensation for the land it has taken from him as required by the Fifth Amendment.

21. Doyle has applied for and been denied an incidental take permit to develop his property, and has cooperated with and assisted the Fish & Wildlife Service and Bureau of Land Management in their efforts to either exchange federal land for his property or to purchase it outright, all to no avail. Doyle has thus concluded that further efforts to work with these agencies to obtain any use of his

land, any exchange land, or any payment for his land would be futile.

22. As a direct, natural, and foreseeable result of the acts of Defendant, Doyle has been damaged in an amount equal to the just compensation due him under the Fifth Amendment, including interest thereon at a rate to be established by this Court.

23. As a further direct, natural, and foreseeable result of the taking of his property without just compensation, Doyle has been required to and has retained the services of counsel to prosecute this action. Doyle has and will incur attorneys' fees, appraiser and expert witness fees, and costs and expenses of litigation in an amount as yet unascertained.

## SECOND CAUSE OF ACTION
### (Payment for land under the Wilderness Act)

24. Doyle realleges and incorporates by this reference all of the proceeding allegations of this complaint, and further alleges as follows:

25. Congress's designation of the Reserve as a wilderness area in 2009 surrounded Doyle's land with federal wilderness land. As the Wilderness Act recognizes, that action requires just compensation. When the landowner is cut off from the use of his land, the Wilderness Act provides for compensation in the form of a land exchange with federally-owned land of approximately equal value:

> In any case where State-owned or privately owned land is completely surrounded by national forest lands within areas designated by this Act as wilderness, such State or private owner shall be given such rights as may be necessary to assure adequate access to such State-owned or privately owned land by such State or private owner and their successors in interest, or the State-owned land or privately

owned land shall be exchanged for federally owned land in the same State of approximately equal value under authorities available to the Secretary of Agriculture . . . .[3]

26. To date, the Secretary of Interior has not exchanged Doyle's land for federally-owned land of approximately equal value, nor has the Secretary provided adequate access to Doyle's land, allowing him to develop it.

27. As a direct, natural, and foreseeable result of the acts of Defendant, Doyle has been damaged in an amount equal to the just compensation due to him under the Fifth Amendment, including interest thereon at a rate to be established by this Court.

28. As a further direct, natural, and foreseeable result of the taking of his property without just compensation, Doyle has been required to and has retained the services of counsel to prosecute this action. Doyle has and will incur attorneys' fees, appraiser and expert witness fees, and costs and expenses of litigation in an amount as yet unascertained.

### THIRD CAUSE OF ACTION
### (Breach of contract)

29. Doyle realleges and incorporates by this reference all of the proceeding allegations of this complaint, and further alleges as follows:

30. Under the provisions of the Habitat Conservation Plan and the Implementation Plan, Defendant contractually agreed to provide Doyle either with land of equal value or payment for his development land.

---

[3] Pub. L. No. 88-577, 78 Stat. 896

31. But Defendant, the United States, has breached these contracts by failing and refusing to exchange or to pay for Doyle's land within the Reserve despite repeated efforts by Doyle to do so.

32. As a direct, natural, and foreseeable result of these acts of Defendant, Doyle has been damaged in an amount yet to be ascertained.

## PRAYER FOR RELIEF

Plaintiffs, James Doyle and Environmental Land Technologies, Ltd., pray for relief as follows:

1. A money judgment equal to the value of the land for which Doyle is owed compensation, as yet unascertained and to be determined according to proof at trial, as set forth in the first and second causes of action;

2. A money judgment in an amount sufficient to compensate Doyle for all damages caused, including money expended and expected profits lost, due to Defendant's breach, as yet unascertained and to be determined according to proof at trial, as set forth in the third cause of action;

3. Reasonable attorneys' fees for bringing and prosecuting this action;

4. The expense of appraisers and other experts reasonably required to prosecute this action, together with the costs of this suit; and,

5. Any other or further relief as the Court may deem just.

Respectfully submitted,

*/s/ Roger J. Marzulla*

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA LAW, LLC
1150 Connecticut Avenue NW Suite 1050
Washington, DC 20036
(202) 822-6760 (telephone)
(202) 822-6760 (facsimile)
Roger@marzulla.com
Nancie@marzulla.com

June 5, 2015                    Counsel for Plaintiff